[No. G045124. Fourth Dist., Div. Three. Sept. 25, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES OROZCO, Defendant and Appellant.

COUNSEL

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**IKOLA, J.**—Defendant James Orozco pleaded guilty to possessing cocaine and driving under the influence of alcohol. The court sentenced him to 60

days in jail and three years of probation for driving under the influence of alcohol, but granted him deferred entry of judgment under Penal Code section 1000 et seq. for possessing cocaine.[1] To satisfy the deferred entry of judgment requirements, defendant enrolled in, but was eventually terminated from, a section 1000 drug treatment program. He moved to be reinstated in the program. The court (a different judge) denied defendant's motion on two alternative grounds: (1) defendant's drunk driving violation rendered him ineligible under section 1000, subdivision (a)(3) (section 1000(a)(3)) for deferred entry of judgment on the cocaine possession charge and (2) defendant had performed unsatisfactorily in the drug treatment program by failing too long to enroll and participate in a timely way.

We hold the court misinterpreted section 1000(a)(3). That subdivision disqualifies a defendant for deferred entry of judgment if he or she has committed (in addition to the crime eligible for deferred entry of judgment) an ineligible offense related to "narcotics or restricted dangerous drugs . . . ." As used in section 1000(a)(3), *alcohol* is neither a "narcotic" nor a "restricted dangerous drug[] . . . ." Nonetheless, we affirm the judgment because the court properly terminated defendant's deferred entry of judgment under section 1000.3 for unsatisfactory performance in the assigned drug treatment program. Finally, because defendant was eligible for deferred entry of judgment in the first instance, we do not address his contention that he must be given an opportunity to withdraw his guilty plea.

## FACTS

On August 20, 2010, before Judge Theodore R. Howard, defendant pleaded guilty to cocaine possession (Health & Saf. Code, § 11350, subd. (a)), driving under the influence of alcohol with a blood-alcohol level of at least 0.08 percent (Veh. Code, § 23152, subds. (a) & (b)), and driving with a suspended license (Veh. Code, § 14601.1, subd. (a)).[2] In exchange, he was sentenced, as to the cocaine possession charge, to deferred entry of judgment pursuant to section 1000, and, as to the Vehicle Code counts, to three years of informal probation on condition he serve 60 days in county jail. The court ordered defendant to submit proof of enrollment in a section 1000 drug treatment program by September 20, 2010,[3] and to submit proof of completion of the program on March 21, 2011. Assuming defendant completed these two requirements, a hearing would be held in February 2012 for the dismissal of the cocaine possession charge.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] Defendant specified the following facts as the basis for his plea: "I did knowingly and unlawfully possess a useable quantity of cocaine and I knowingly and unlawfully drove a vehicle while under the influence of alcohol with a [blood-alcohol content of 0.18 percent] and while my [driver's license] was suspended."

[3] All dates refer to the year 2010 unless otherwise stated.

The court stayed defendant's jail sentence for eight weeks, until October 8 (assuming he was not accepted and enrolled in home confinement), to give him time to enroll in a drug treatment program.

On September 20, the court granted defendant an extension of time to submit proof of enrollment in a drug treatment program.

On October 4, Judge Erick L. Larsh granted defendant another extension of time to enroll in a drug treatment program and to complete the requirements for applying for home confinement. The court specified a deadline of November 5, and stressed this was defendant's last chance: "You have to have it done. If it's not done, then you'll have to do jail time."

On November 5, defendant submitted to the court his proof of enrollment in a drug treatment program. The court apparently instructed him to have "his [home] confinement bracelet put on that day,"[4] but defendant instead turned himself in to serve time in actual custody for his Vehicle Code offenses.

Over four months later, at a March 21, 2011 hearing, Judge Larsh stated defendant had been terminated from the drug treatment program for absences on November 3, 10, and 17. The termination report showed defendant had completed a one-hour intake, a fee assessment, one treatment plan, one education hour, and one group counseling. Because defendant advised the court he could not afford counsel, the court appointed the public defender to represent him.

Defense counsel explained to the court the circumstances of defendant's termination from the drug treatment program: Due to his incarceration beginning on November 5, he was absent from the program for three weeks and was therefore terminated from it. After defendant's release from jail, he lost his job, became homeless, and had no money to pay for a program. Defendant was now employed, had a place to stay, and could afford to pay for a program. He therefore asked the court to reinstate him.

Judge Larsh—noting that a different judge had taken defendant's guilty plea—suggested defendant might have been ineligible for deferred entry of judgment under *People v. Duncan* (1990) 216 Cal.App.3d 1621 [265 Cal.Rptr. 612] (*Duncan*). The court continued sentencing to April 7, 2011, so that defense counsel could research the issue.

---

[4] The prosecutor gave the court this information at the April 7, 2011 hearing on defendant's motion for reinstatement into a section 1000 program.

On April 7, 2011, the court denied defendant's motion to reinstate him into a program because (1) the motion was untimely and (2) the court believed he was ineligible for deferred entry of judgment. The court gave defendant two sentencing options: (1) felony probation and 60 days in jail, with credit for time served or (2) felony probation and 90 days in jail, with the jail time stayed on condition he complete a Proposition 36 diversion program. Defendant chose the first option. The court sentenced defendant to 60 days in jail (with credit for 60 days) and three years of supervised probation.

## DISCUSSION

*The Court Erred by Finding Defendant Was Ineligible for Deferred Entry of Judgment*

Defendant disputes the court's ruling he was ineligible for deferred entry of judgment, arguing "there was no evidence of any controlled substance in his blood."

■ Deferred entry of judgment (DEJ) under section 1000 et seq., serves the twofold purpose of rehabilitating an " 'experimental or tentative user . . . without the lasting stigma of a criminal conviction' " and " 'reduc[ing] the clogging of the criminal justice system by drug abuse prosecutions.' " (*People v. Barrajas* (1998) 62 Cal.App.4th 926, 930 [73 Cal.Rptr.2d 123].) Under the statutory scheme, defendants charged with certain offenses involving controlled substances (the divertible offenses) may consent to DEJ and thereby be diverted from conventional criminal prosecution. (§§ 1000, subd. (a), 1000.2; *In re Varnell* (2003) 30 Cal.4th 1132, 1138 [135 Cal.Rptr.2d 619, 70 P.3d 1037].) To be granted DEJ, a defendant must (1) plead guilty to the divertible offense or offenses (§ 1000.1, subd. (b)); (2) meet all six eligibility requirements set forth in section 1000, subdivision (a); and (3) be deemed by the court to be a person who would benefit from education, treatment, rehabilitation, and DEJ (§§ 1000.1, subd (b), 1000.2). If a defendant (who has been granted DEJ) completes an assigned drug treatment program and otherwise performs satisfactorily during a period of 18 months to three years (§§ 1000, subd. (c), 1000.3, 1000.4, 1001.1, subd. (a)(3)), the charges for the divertible offenses are dismissed (§ 1000.3).

Here, defendant was charged with unlawful possession of cocaine, a divertible offense. (§ 1000, subd. (a); Health & Saf. Code, §§ 11054, subd. (f)(1), 11055, subd. (b)(6), 11350, subd. (a).) Defendant pleaded guilty to the charge and consented to DEJ.

■ But the court ruled defendant was ineligible for DEJ under section 1000(a)(3). Under section 1000(a)(3), a defendant is ineligible for DEJ if he or she has committed a nondivertible offense "relating to narcotics or *restricted dangerous drugs*." (Italics added.) Because defendant pleaded guilty to driving under the influence of *alcohol*, a nondivertible offense, the court concluded he was ineligible for DEJ under section 1000(a)(3). Alcohol is not a narcotic. (Health & Saf. Code, § 11019 [definition of "narcotic drug"].) Therefore, the court impliedly found alcohol is a "restricted dangerous drug[]" within the meaning of section 1000(a)(3). We have found no current statutory definition, nor have the parties pointed us to one, for the term "restricted dangerous drugs."

■ Thus, at issue in this case is the scope and meaning of the term "restricted dangerous drugs" as used in section 1000(a)(3). We examine that question of law de novo. (*People v. Salcido* (2008) 166 Cal.App.4th 1303, 1311 [83 Cal.Rptr.3d 561].) " 'As in any case involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose.' " (*People v. Cole* (2006) 38 Cal.4th 964, 974 [44 Cal.Rptr.3d 261, 135 P.3d 669].) "If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*Id.* at p. 975.) In addition, " 'the "wider historical circumstances" of the enactment may be considered.' " (*People v. Moore* (2004) 118 Cal.App.4th 74, 78 [12 Cal.Rptr.3d 649].)

We turn to the extrinsic aids of section 1000(a)(3)'s legislative history and its wider historical circumstances, which together reveal that the term "restricted dangerous drugs" is a remnant of California's former statutory drug classification system. Health and Safety Code former section 11901 defined " '[r]estricted dangerous drugs' " to include only " '[h]ypnotic drugs' " (such as barbituric acid derivatives) and amphetamines. (Stats. 1965, ch. 2030, § 1, p. 4603.) Health and Safety Code former section 11910 prohibited the possession of a restricted dangerous drug without a prescription. (Stats. 1970, ch. 1098, § 14, p. 1953.) In 1972, the Legislature enacted the *California Uniform Controlled Substances Act* (Health & Saf. Code, § 11000 et seq.), which "classifies controlled substances in accord with the five schedules of the federal and uniform Acts." (2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Public Peace and Welfare, § 63, p. 572.) The California Uniform Controlled Substances Act replaced Health and Safety Code former section 11910 (prohibiting possession of restricted dangerous

drugs) with Health and Safety Code section 11377 (prohibiting possession of specified controlled substances). (See Historical and Statutory Notes, 40 pt. 2 West's Ann. Health & Saf. Code (2007 ed.) foll. § 11377, p. 477.)

The legislative history of section 1000 et seq. reveals the DEJ statutes were amended in 1975 to conform to the California Uniform Controlled Substances Act. (Cal. Off. of Narcotics and Drug Abuse, Analysis of Assem. Bill No. 1274 (1975–1976 Reg. Sess.) Sept. 19, 1975.) As relevant here, the 1975 amendment replaced references to Health and Safety Code former section 11910 with references to Health and Safety Code section 11377. In addition, the 1975 amendment "clarified" the eligibility criterion in section 1000, subdivision (a)(1) "by replacing the words 'narcotics and restricted dangerous drugs' [with] the more comprehensive term, 'controlled substances.' " (Cal. Off. of Narcotics and Drug Abuse, Analysis of Assem. Bill No. 1274, *supra*, Sept. 19, 1975.) As a result of this legislative amendment, section 1000, subdivision (a)(1) specifies as an eligibility requirement: "The defendant has no conviction for any offense involving controlled substances prior to the alleged commission of the charged offense." But the Legislature did not amend section 1000(a)(3), which still refers to "narcotics or restricted dangerous drugs" and is therefore inconsistent with section 1000, subdivision (a)(1) (which contains most of the DEJ divertible offenses), as well as with the Uniform Controlled Substances Act (Health & Saf. Code, § 11000 et seq.). Indeed, all of the divertible offenses relate to "controlled substances."

Alcohol is not a controlled substance within the meaning of the California Uniform Controlled Substances Act. Health and Safety Code section 11007 defines a controlled substance, unless otherwise specified, as "a drug, substance, or immediate precursor which is listed in any schedule in [Health and Safety Code] Section 11054, 11055, 11056, 11057, or 11058." Alcohol is not listed in these schedules. Nor is alcohol a hypnotic drug or amphetamine within the former definition of "restricted dangerous drugs." As already stated, alcohol is not a narcotic. We conclude that alcohol-related offenses do not fall within the scope of section 1000(a)(3).

Other relevant statutes are consistent with our interpretation that alcohol is not a restricted dangerous drug, or any type of "drug" for that matter. Vehicle Code section 312 defines the term "drug" as "any substance or combination of substances, *other than alcohol*, which could so affect . . . a person as to impair . . . his ability to drive . . . ." (Italics added.) Vehicle Code section 23152, subdivision (a) prohibits driving "under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug." Health and Safety Code section 11014 and Business and

Professions Code section 4025 generally define the term "drug" with reference to official pharmacopoeia.[5] Section 1463.13 et seq., relating to alcohol and drug programs, consistently refer to alcohol disjunctively to drugs and controlled substances.

We conclude that a defendant charged with a divertible offense is *not* rendered ineligible for DEJ by section 1000(a)(3) due to evidence of an alcohol-related violation. *Duncan*, on which the trial court relied, is consistent with this conclusion. *Duncan* interpreted section 1000(a)(3) "to include driving under the influence of a *controlled substance*." (*Duncan, supra*, 216 Cal.App.3d at p. 1628, italics added.) *Duncan* stressed that "there was significant evidence that defendant was under the influence of *cocaine* while driving." (*Id.* at p. 1627, italics added.)[6]

The Attorney General relies on *People v. Canty* (2004) 32 Cal.4th 1266 [14 Cal.Rptr.3d 1, 90 P.3d 1168], but that case is inapposite. *Canty* interpreted section 1210.1, enacted by Proposition 36 (the Substance Abuse and Crime Prevention Act of 2000), under which a person "convicted of a 'nonviolent drug possession offense' must receive probation and diversion into a drug treatment program." (*Canty*, at p. 1272.) Under subdivision (b)(2) of section 1210.1, a person is ineligible for probation and diversion if he or she "has been convicted in the same proceeding of a misdemeanor *not* related to the use of drugs." (Italics added.) *Canty* held "that the misdemeanor of driving a vehicle while under the influence of a controlled substance is 'a misdemeanor not related to the *use* of drugs.'" (*Canty*, at p. 1273, italics added.) In other words, *driving* while under the influence is "not an activity similar to those misdemeanors involving the simple possession, use, or presence at the use of drugs, or the failure to register one's status as a drug offender." (*Id.* at p. 1280.) Here, the issue turns on the definition of the involved substance, not on the distinction between driving while under the influence and mere possession.

---

[5] Webster's Third New International Dictionary (2002), at page 1694, defines "pharmaceutical" as a medicinal drug, and "pharmacopoeia" as "a book containing a selected list of drugs, chemicals, and medicinal preparations with descriptions of them, tests for their identity, purity, and strength, and formulas for making the preparations; esp.: one issued by official authority and recognized as a standard."

[6] *Duncan* contains two long paragraphs (which the trial court in the case at hand quoted as a basis for its ruling) about the Legislature's enactment of Vehicle Code sections 23202 and 23152 "in response to growing public concern about intoxicated drivers" (*Duncan, supra*, 216 Cal.App.3d at p. 1628) and the Legislature's clear intent "to deny pretrial and even presentence diversion to those apprehended for driving under the influence" (*ibid.*). Here, defendant was sentenced to a jail term for his Vehicle Code section 23152 alcohol-related violation and served his time.

The court erred by ruling, based on section 1000(a)(3), that defendant was ineligible for DEJ due to his driving under the influence of alcohol.

*The Court Did Not Err by Terminating Defendant's DEJ for Untimeliness*

Defendant contends no evidence shows he could have sought reinstatement into a drug treatment program earlier than he did and the court therefore erred by denying for untimeliness his reinstatement motion. We apply the substantial evidence standard of review to the court's ruling, since, under section 1000.3, a court may terminate DEJ and enter judgment only if the court finds, inter alia, the defendant "is performing unsatisfactorily in the assigned program [or] is not benefiting from education, treatment, or rehabilitation."

Substantial evidence supports the court's implied finding defendant failed to perform satisfactorily in the assigned program or to benefit from education, treatment, or rehabilitation. Defendant was granted sufficient time and two "last" chances to enroll in a drug treatment program, but failed to do so until shortly before his deadline to obtain home confinement or begin his jail incarceration. He was absent from the program on November 3, two days before he turned himself into jail. Thus, defendant was not performing satisfactorily in the program even before he went to jail. On November 24 or 25, he was released from jail on a work release program (pursuant to which a person goes to jail and works from around 6:00 a.m. or 7:00 a.m. to 4:00 p.m. or 5:00 p.m.). On November 24, defendant was terminated from the drug treatment program due to his absences on November 3, 10, and 17. Defendant completed his jail time "sometime in December." He did not contact the court until March 21, 2011.

Defendant relies on *People v. Trask* (2010) 191 Cal.App.4th 387 [119 Cal.Rptr.3d 91], but that case is distinguishable. There, the Court of Appeal held the "trial court erred in terminating defendant's diversion under deferred entry of judgment solely based on her inability to pay the fees of the [drug treatment] program to which she was referred." (*Id.* at p. 397.) *Trask* observed that "the plain language of *section 1000.3*" does not allow for termination of diversion for inability to pay. (*Id.* at p. 396, italics added.) The defendant in *Trask* tried to enroll in the assigned diversion program, but could not afford the cost. (*Id.* at p. 392.) She "sought assignment to a no-cost diversion program or a fee waiver for an approved program." (*Ibid.*) Here, in contrast, defendant never sought financial aid or an administrative review of his financial ability to pay.

The court did not err by terminating defendant's DEJ for untimeliness and unsatisfactory performance in a program.

## DISPOSITION

The judgment is affirmed.

O'Leary, P. J., and Rylaarsdam, J., concurred.