Filed 6/18/13  In re Oscar A. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re OSCAR A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> OSCAR A., <br><br> Defendant and Appellant. | G047567 <br><br> (Super. Ct. No. DL042173) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Nick A. Dourbetas, Judge.  Affirmed as modified.

Rex Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

Oscar A. appeals from a judgment after he admitted committing lewd and lascivious acts upon a child under 14 years of age and the juvenile court declared him a ward of the court pursuant to Welfare and Institutions Code section 602. Oscar argues: (1) the juvenile court erred in finding he was not suitable for deferred entry of judgment (DEJ); and (2) the probation condition prohibiting him from using or possessing sexually explicit material is unconstitutionally vague and overbroad. The Attorney General suggests the probation condition be modified to address Oscar's concerns but argues the juvenile court properly denied DEJ. We modify probation condition No. 26, and affirm the judgment in all other respects.

FACTS

On several occasions, Oscar touched his niece's buttocks over her clothes while she was sleeping in her bedroom. On one occasion, he touched her breast over her clothes while she was sleeping in her bedroom.

A petition charged Oscar with two counts of committing a lewd act upon a child under 14 years of age (Pen. Code, § 288, subd. (a)). During the pendency of the proceedings, the prosecutor prepared and filed a "Determination of Eligibility [of] Deferred Entry of Judgment—Juvenile" (DEJ) (Welf. & Inst. Code, § 790, subd. (b)),[1] finding Oscar was eligible for DEJ.

In May 2012, the Orange County Probation Department prepared a DEJ suitability report (the Report). The Report stated then 16-year-old Oscar who was in 10th grade had no criminal history, although he was expelled from high school the prior year for selling Ecstasy on campus. The Report said Oscar had a grade point average of 3.48 and had passed both portions of the California High School Exit Exam. The Report stated Oscar planned to graduate high school, join the military, and pursue a career in mental health.

_____

[1] All further statutory references are to the Welfare and Institutions Code.

The Report indicated Oscar was obedient, respectful, and diligent at home, was not involved in gangs or tagging crews, and he did not have any tattoos. However, the Report noted Oscar had experimented with drugs. The Report explained a male friend of Oscar's mother sexually abused Oscar when he was 11 years old, an incident that allegedly occurred in Kern County and was not reported to police until after the offenses that occurred here.

With respect to the offenses, the Report explained Oscar took advantage of close family relationships and victimized his younger niece while she slept. The Report said Oscar was remorseful for his conduct, and understood it was wrong and there were consequences for the offenses he committed when he was 14 years old and the victim was 10 years old. The Report explained Oscar could comply with probation programs and terms and conditions.

The Report indicated Oscar's mother is supportive, is willing to assist in Oscar's rehabilitation, will hold him accountable for his conduct, and believes the level of supervision at home is adequate. The Report stated, however, that the victim's mother, Oscar's sister, disputes there is an adequate level of supervision at the home; Oscar's sister stated she was sexually abused while she lived with their mother and she feels their mother would also benefit from counseling. The Report stated the mother enrolled Oscar in counseling, which he attends once a week, to address the offenses he committed here, and his own victimization and substance abuse issues.

The Report stated that although the social worker considered Oscar's suitability for DEJ, wardship was appropriate. The Report explained: "It is strongly felt, given the nature of the alleged offense, that [Oscar] is in need of a *significant period of sex offender counseling* in order to address his involvement in the offense and the issues surrounding his behavior, as well as his own victimization. [¶] Given all the case factors, it is felt [Oscar] is more suitable for a declaration of wardship at this time. It is

3

generally felt criminal conduct involving sexually based offenses dictates a need for a supervision program which includes options for immediate intervention, if necessary, to provide protection for the community and the needs of [Oscar]." (Italics added.) The Report stated Oscar's home environment was adequate if properly supported. The Report recommended Oscar be declared a ward of the court, be released to the custody of his mother, attend school regularly, complete a sex offender treatment program, and participate in the Juvenile Court Work Program and drug and alcohol counseling.

At the DEJ suitability hearing on September 10, 2012, the juvenile court heard victim impact statements and counsels' argument. The prosecutor argued the court should declare 16-year-old Oscar[2] a ward of the court because he needs formal supervision and counseling. The prosecutor reasoned Oscar was a sexual abuse victim and "he is now repeating the cycle[.]" Defense counsel contended Oscar was suitable for DEJ. Counsel described the offenses as impulsive, unsophisticated, and ordinary. Counsel claimed Oscar was a good student who earned appropriate grades. Counsel stated Oscar has strong family support and he is attending counseling.

After stating it had read, considered, and accepted into evidence the DEJ suitability report, the court ruled: "The court has weighed and considered the factors as stated in . . . [section] 791, and the court finds that [Oscar] is not suitable for [DEJ]. And that [Oscar] would not be benefitted by the education treatment or rehabilitation of a [DEJ]. The [section] 602 ward status is more appropriate."

Oscar admitted he committed both offenses. The juvenile court declared Oscar a ward of the court pursuant to section 602 and placed him on supervised probation with terms and conditions. As relevant here, one of those conditions, probation condition No. 26, was that Oscar "not to use or possess any sexually explicit material, including but

---

[2] At the time of the DEJ suitability hearing, Oscar's 17th birthday was looming.

4

not limited to, CDs, DVDs, video cassettes, magazines, pictures, letters, or drawings, which depict or describe any sexual act, or nudity."

DISCUSSION

*I. DEJ*

Oscar argues the juvenile court erred in finding him unsuitable for DEJ because he would benefit from DEJ's education, treatment, and rehabilitation and releasing him to the custody of his mother is a less restrictive commitment. We disagree.

"The DEJ provisions of section 790 et seq. 'provide that in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment. Entry of judgment is deferred. After the successful completion of a term of probation, on the motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges. The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court proceeding are sealed. [Citations.]' [Citations.]

"'Section 790 makes a minor eligible for DEJ if all the following circumstances exist: [¶] "(1) The minor has not previously been declared to be a ward of the court for the commission of a felony offense. [¶] (2) The offense charged is not one of the offenses enumerated in subdivision (b) of [s]ection 707. [¶] (3) The minor has not previously been committed to the custody of the [Department of Corrections and Rehabilitation, Division of Youth Facilities]. [¶] (4) The minor's record does not indicate that probation has ever been revoked without being completed. [¶] (5) The minor is at least 14 years of age at the time of the hearing. [¶] (6) The minor is eligible for probation pursuant to [s]ection 1203.06 of the Penal Code." [Citation.]' [Citation.]

5

"'If the minor waives the right to a speedy jurisdictional hearing, admits the charges in the petition and waives time for pronouncement of judgment, the court may summarily grant DEJ or refer the matter to the probation department for further investigation. The department is required to take into consideration "the defendant's age, maturity, educational background, family relationship, demonstrable motivation, treatment history, if any, and other mitigating and aggravating factors in determining whether the minor is a person who would be benefited by education, treatment, or rehabilitation." [Citation.] The [juvenile] court makes "the final determination regarding education, treatment, and rehabilitation of the minor." [Citation.]' [Citation.]

"'To be admitted to the DEJ program, a minor must be eligible under section 790, subdivision (a). While such eligibility is a necessary condition for DEJ, it is not alone a sufficient basis. Under proper circumstances the court may refuse DEJ even to minors eligible under section 790, subdivision (a). [Citation.] While section 790 et seq. might be clearer on the matter, we conclude *such denial is proper only when the trial court finds the minor would not benefit from education, treatment and rehabilitation*. [¶] Proposition 21 contains a noncodified section entitled Findings and Declarations; subdivision (j)[,] of those findings states: "Juvenile court resources are spent disproportionately on violent offenders with little chance to be rehabilitated. If California is going to avoid the predicted wave of juvenile crime in the next decade, greater resources, attention, and accountability must be focused on less serious offenders such as burglars, car thieves, and first time non-violent felons who have potential for rehabilitation. This act must form part of a comprehensive juvenile justice reform package which incorporates major commitments to already commenced 'at risk' youth early intervention programs and expanded informal juvenile court alternatives for low-level offenders. *These efforts, which emphasize rehabilitative protocols over incarceration, must be expanded as well under the provisions of this act, which requires*

*first time, non-violent juvenile felons to appear in court, admit guilt for their offenses, and be held accountable, but also given a non-custodial opportunity to demonstrate through good conduct and compliance with a court-monitored treatment and supervision program that the record of the juvenile's offense should justly be expunged." . . . [¶]* These findings express not only a strong preference for rehabilitation of first-time nonviolent juvenile offenders but suggest that under appropriate circumstances DEJ is required. This strong preference for rehabilitation and the limitation on the court's power to deny delayed entry of judgment are reflected in the procedures used in considering DEJ.' [Citation.]" (*In re A.I.* (2009) 176 Cal.App.4th 1426, 1432-1434.)

Here, although the juvenile court could have done a better job providing its reasoning, we conclude substantial evidence supports the court's implied finding Oscar would not benefit from DEJ's education, treatment, and rehabilitation. (*People v. Orozco* (2012) 209 Cal.App.4th 726, 735 [substantial evidence supports court's implied finding].) The record includes evidence a friend of Oscar's mother sexually abused then 11-year-old Oscar when Oscar's mother was literally steps away. The incident was not reported to the police until after the offenses occurred here. About three years later, 14-year-old Oscar abused a position of trust and victimized his young niece by touching her inappropriately while she was in her bedroom asleep and at her most vulnerable. This evidence supports the conclusion Oscar was engaged in a cycle of sexual abuse and needed to address those issues before his conduct escalated. In furtherance of that goal, the juvenile court declared Oscar a ward of the court and ordered him to complete a sexual offender program, among other work, counseling, and probation requirements. We presume the juvenile court was aware of the services possible and conclude the evidence supports the finding the court believed Oscar would receive a greater benefit from more extensive services than DEJ could provide.

Additionally, the Report recommended "a significant period of sex offender counseling." At the time of the suitability hearing, Oscar was almost 17 years old. Section 791, subdivision (a)(3), mandates dismissal of the charges no later than three years after referral to DEJ. Oscar would be almost 20 years old at that point. Yet section 607, subdivision (a), authorizes the juvenile court to retain jurisdiction over a ward until the child reaches 21 years of age. Based on the Report's recommendation Oscar needed significant sexual offender counseling, we can imply the court denied DEJ because wardship afforded Oscar an extra year of counseling he would not have been entitled to had the court granted him DEJ. (*In re C.W.* (2012) 208 Cal.App.4th 654, 660 [juvenile court's sole discretion whether minor will benefit from DEJ rather than more restrictive commitment].) The fact Oscar was released to the custody of his mother does not alter our conclusion the record includes sufficient evidence supporting the court's determination Oscar would receive a greater benefit from the more restrictive wardship than from DEJ.

We commend Oscar on his acceptance of responsibility and his performance in school. We urge him to continue to work hard in both the classroom and in his counseling sessions.

Oscar's reliance on *Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, is misplaced. In that case, the juvenile court denied DEJ not based on minor's personal characteristics but to "send a message to other potential juvenile drug smugglers that there would be permanent consequences flowing from such criminal activity." (*Id.* at p. 562.) The court of appeal concluded this was not an appropriate basis for denying DEJ because it had nothing to do with minor's "potential for rehabilitation." (*Ibid.*) In contrast here, there is no indication the court denied Oscar DEJ to deter others from committing similar conduct but instead to assist Oscar in his rehabilitation. Thus, the court did not abuse its discretion in denying Oscar DEJ.

## II. Probation Condition

Oscar contends the probation condition prohibiting him from using or possessing "sexually explicit material" is unconstitutionally vague and overbroad because the condition is not narrowly tailored and the term sexually explicit material is imprecise. The Attorney General suggests we modify the probation condition to define "sexually explicit material" as defined under federal law. Oscar agrees in part.

18 U.S.C. section 2256(2)(A) defines sexually explicit conduct as "(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; [¶] (ii) bestiality; [¶] (iii) masturbation; [¶] (iv) sadistic or masochistic abuse; or [¶] (v) lascivious exhibition of the genitals or pubic area of any person[.]"

By using this list of acts to elucidate the term "sexually explicit" in Oscar's probation condition, we enable him to know more precisely which materials he must stay away from. This will not only further the goals of rehabilitating Oscar and protecting the public, but also ensure the subject condition is neither vague nor overly broad. Therefore, we will modify the condition to reference these particular acts. (*In re Sheena K.* (2007) 40 Cal.4th 875, 892 [appellate court may modify probation condition to render condition constitutional].)

Oscar asserts, however, that by including in the definition the term "sexual intercourse," this would prohibit him from possessing a biology textbook. He has a point. Thus, we will modify probation condition No. 26 accordingly.

## DISPOSITION

The condition of Oscar's probation prohibiting him from using or possessing any sexually explicit material is modified as follows: Oscar shall not use or possess any CDs, DVDs, video cassettes, magazines, pictures, letters, drawings, materials, or devices that depict sexually explicit conduct, which is defined as the following: (1) sexual intercourse, including genital-genital, oral-genital, anal-genital, or

9

oral-anal, except that depicted in school district approved and distributed textbooks or course materials; (2) bestiality; (3) masturbation; (4) sadistic or masochistic abuse; or (5) lascivious exhibition of the genitals, breast, or pubic area of any person.

In all other respects, the judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

10