Filed 5/31/16  P. v. Tucker CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| THE PEOPLE, | C078143 |
| Plaintiff and Respondent, | (Super. Ct. No. 12CR19686) |
| v. | |
| JASON LEE TUCKER, | |
| Defendant and Appellant. | |

Defendant Jason Lee Tucker was sentenced to four years in state prison after the trial court found he willfully violated the term of probation that required him to participate in and complete a 52-week batterer's treatment program (hereafter, the 52-week program).

On appeal, defendant contends the trial court erred in finding his probation violation was willful and abused its discretion in sentencing him to state prison.  We affirm the judgment.

1

FACTS AND PROCEEDINGS

A recitation of the facts underlying defendant's conviction is unnecessary for the disposition of this appeal.

Defendant was charged by information with infliction of corporal injury on a cohabitant. (Pen. Code, § 273.5, subd. (a); unless otherwise set forth, statutory references that follow are to the Penal Code.) The information alleged that, during the commission of the offense, defendant inflicted great bodily injury on the victim under circumstances involving domestic violence within the meaning of section 12022.7, subdivision (e), and that defendant committed the offense within seven years of a previous conviction for the same offense within the meaning of former section 273.5, subdivision (e)(1) (now subdivision (f)(1) pursuant to Stats. 2012, ch. 867, § 16, effective January 1, 2013).

Defendant entered a negotiated plea of guilty to felony corporal injury on a cohabitant in exchange for dismissal of all remaining allegations, no state prison time, and 240 days in county jail (minus credit for 213 days served) followed by four years of formal probation.

On January 3, 2013, the trial court granted defendant four years of formal probation subject to terms and conditions including that defendant "[p]articipate in and complete" the 52-week program at the direction of the probation officer. Defendant was ordered to first serve 240 days in county jail minus credit for 213 days served. The court also imposed a stay-away order regarding the victim.

On March 11, 2013, defendant provided the court and probation with proof of enrollment in the 52-week program.

On August 2, 2013, the probation department filed a petition for revocation of probation alleging defendant "failed to participate in" the 52-week program. The August 2, 2013, petition alleges that, on April 16, 2013, probation received notice from defendant's counselor indicating defendant had failed to attend any counseling sessions

2

subsequent to his enrollment in the 52-week program; on April 16, 2013, probation confronted defendant about his failure to attend the 52-week program and ordered defendant to immediately re-enroll and start attending scheduled sessions; and defendant "stated he understood." The petition further alleged that, on July 31, 2013, defendant's counselor informed probation that defendant had only attended two sessions and then missed four subsequent appointments within a two-week period.

On August 8, 2013, defendant admitted the probation violation stating he had only attended three sessions since the court's January 2013 order. He informed the court, "I had just gotten a job within the last two or three weeks. It's a very good job, and I was unable to pay my classes. That's why I didn't continue to go." On the recommendation of probation, the court stayed the recommended 60-day custody period and ordered defendant to appear for judgment and sentencing in 30 days to produce proof of attendance in the 52-week program.

On September 9, 2013, defendant appeared for judgment and sentencing and informed the court that, since March 2013, he attended five classes, two during the month of September. The court continued judgment and sentencing for another 60 days to allow defendant to attend the program and provide proof of "significant progress."

At a hearing on November 18, 2013, the court noted a report from probation indicating defendant "failed to attend treatment sessions and [was] terminated for excessive absences." Defendant did not offer any evidence of attendance, but instead offered to provide a letter "from a gal that I've been working with or working for, what not . . . [n]othing to do with the classes." The court sentenced defendant to 60 days in county jail.

On January 30, 2014, the probation department filed a first amended petition for revocation of probation alleging defendant failed to participate in and complete the 52-week program and was "found to be within 100 yards of the victim" in violation of the

court's stay-away order. The petition further alleged that defendant had yet to re-enroll in the 52-week program since his release from county jail on December 8, 2013.

On March 6, 2014, defendant admitted violating probation as alleged in the first amended petition in exchange for suspended execution of a four-year state prison sentence, waiver of 338 days of presentence custody credit, and enrollment in and completion of the 52-week program. The following day, the court imposed a sentence of four years in state prison, suspended execution of that sentence, and granted defendant 48 months of formal probation subject to specified terms and conditions, including that he participate in and complete the 52-week program. The court further ordered defendant to appear in 45 days to produce proof of enrollment in the program, and ordered him to pay all fees and fines originally imposed. At that time, defendant represented to the court that he was "self-employed . . . doing landscaping, yard work."

On April 25, 2014, defendant appeared in court with proof of enrollment in the 52-week program.

On October 17, 2014, the probation department filed a petition for revocation of probation alleging defendant failed to participate in the 52-week program, and "failed to observe good conduct." The petition noted that defendant was being terminated from the program "for excessive absences."

On October 22, 2014, defendant denied the allegations in the petition and requested a contested hearing. Defense counsel requested that defendant be released on his own recognizance because he was "employed at . . . a local restaurant."

On December 5, 2014, at the contested probation violation hearing, defendant's counselor and instructor for the 52-week program, Abraham Cerezo, testified defendant started the program on March 8, 2013, and was terminated from the program for "too many missed sessions." Defendant re-enrolled in the program on April 23, 2014, and was terminated again on October 10, 2014, for "[t]oo many missed sessions." During that period, defendant attended a total of 14 sessions and missed more than seven.

4

Cerezo testified he received telephone calls and texts from defendant "saying he's trying to make it but was unable to make it for a myriad of reasons." Cerezo gave defendant the opportunity to make up the missed classes but defendant failed to do so.

Cerezo testified the program policy allowed an attendee three excused absences in a three-month period. Absences were excused for injury or illness. However, all of defendant's absences were unexcused, and defendant never provided any documentation regarding any of those absences. Cerezo further testified the weekly program classes were "pay-as-you-go" meaning the money was collected up front when the attendee walked into class. If the attendee was unable to pay, he or she was allowed "two weeks of nonpayment, and on the third week, they need to pay." If the attendee was unable to pay on the third week, they were told "they're at their limit" and could not attend class. However, Cerezo testified, defendant was never turned away from class for nonpayment.

Defendant's probation officer, Joshua Huggett, testified the terms and conditions of defendant's probation required that defendant "[p]articipate in and complete" the program. Defendant contacted Huggett on April 2, 2014, and said "he was struggling with his financial situation to pay for the classes." Huggett offered defendant transportation to look for employment in and around the county. Defendant accepted the invitation once but declined it thereafter.

The court noted that the probation condition "anticipated that a person attend classes weekly and . . . there is room for some excused absences," adding that "it is quite appropriate for them to indicate that after so many unexcused absences the program is – you're not participating as you're expected to in the program." The court concluded defendant violated the terms and conditions of probation by not participating in the 52-week program as directed.

Defense counsel argued that defendant was entitled to 18 months to complete the 52-week program and, given that his probation was amended in March 2014, the 18-month period had yet to run. The prosecution countered that defendant was originally

5

placed on probation on January 3, 2013, and since then had "shown that he's not willing to comply and complete" the program. The court found defendant had had two opportunities to complete the 52-week program and failed to do so. Defendant was released on a two-week *Cruz* waiver with electronic monitoring and a stipulation for imposition of the upper term (five years) in the event of either a failure to appear or a violation of any law during that two-week period.

Defendant appeared as promised on December 19, 2014, and was remanded into custody pursuant to the stipulated four-year state prison sentence. He filed a timely notice of appeal.

DISCUSSION

I

*Willful Violation of Probation*

Defendant contends there was insufficient evidence to support the trial court's finding that he willfully violated the condition of his probation requiring him to participate in and complete the 52-week program.

*Relevant Law*

Section 1203.097 requires that a person granted probation after being convicted of a crime of domestic violence shall, as a condition of that probation, be required to complete a batterer's treatment program "for a period not less than one year with periodic progress reports by the program to the court every three months or less and weekly sessions of a minimum of two hours class time duration." (§ 1203.097, subd. (a)(6).) Subdivision (a) of section 1203.097 also provides that the probationer "shall attend consecutive weekly sessions, unless granted an excused absence for good cause by the program for no more than three individual sessions during the entire program, and shall complete the program within 18 months, unless, after a hearing, the court finds good

6

cause to modify the requirements of consecutive attendance or completion within 18 months." (*Ibid.*)

A defendant is required to "comply with all probation requirements, including the requirements to attend counseling, keep all program appointments, and pay program fees based upon the ability to pay." (§ 1203.097, subd. (a)(7)(A)(i).)

"Section 1203.2, subdivision (a), authorizes a court to revoke probation if the interests of justice so require and the court, in its judgment, has reason to believe that the person has violated any of the conditions of his or her probation. [Citation.] ' "When the evidence shows that a defendant has not complied with the terms of probation, the order of probation may be revoked at any time during the probationary period. [Citations.]" [Citation.]' [Citation.] The standard of proof in a probation revocation proceeding is proof by a preponderance of the evidence. [Citation.] 'Probation revocation proceedings are not a part of a criminal prosecution, and the trial court has broad discretion in determining whether the probationer has violated probation.' [Citation.]" (*People v. Urke* (2011) 197 Cal.App.4th 766, 772.)

We review the trial court's findings regarding defendant's probation violation pursuant to the substantial evidence standard of review, "and great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court. [Citations.]' " (*People v. Urke, supra,* 197 Cal.App.4th at p. 773.) " 'The discretion of the court to revoke probation is analogous to its power to grant the probation, and the court's discretion will not be disturbed in the absence of a showing of abusive or arbitrary action. [Citations.]' [Citation.] 'Many times circumstances not warranting a conviction may fully justify a court in revoking probation granted on a prior offense. [Citation.]' [Citation.] ' "[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation . . . ." ' [Citation.] And the burden of demonstrating an abuse of the trial

7

court's discretion rests squarely on the defendant." (*People v. Urke, supra*, 197 Cal.App.4th at p. 773.)

*Analysis*

Here, defendant claims the evidence showed he "had been attending batterer's program classes since being placed on probation on January 3, 2013," but his attendance was interrupted by jail sentences for prior probation violations after which he "had to start all over with the classes" and his previous attendance was not applied to the 52-week requirement. He further argues that, between April 23, 2014, and October 10, 2014, he attended 14 classes and had at least three unexcused absences. To the contrary, the record demonstrates defendant's participation in the 52-week program was less than satisfactory.

Defendant was first granted probation on January 3, 2013. He did not, however, enroll in the 52-week program until March 11, 2013. As of April 16, 2013, he had not attended any sessions. When confronted by his probation officer and ordered to do so, defendant said "he understood." However, as of July 31, 2013, defendant had only attended two sessions and had missed four subsequent appointments within a two-week period.

Defendant admitted, on August 8, 2013, that he had only attended three classes since his grant of probation in January 2013. He told the court, "I had just gotten a job within the last two or three weeks. It's a very good job, and I was unable to pay my classes. That's why I didn't continue to go." The court gave him a second chance by staying the 60-day jail term and giving defendant 30 days to produce proof of attendance in the program.

When defendant returned to court a month later, he told the court he had attended just five sessions since March 2013. Again, the court continued judgment and sentencing

8

and gave defendant another 60 days to attend the program and provide proof of "significant progress."

Two months later, on November 18, 2013, probation reported that defendant "failed to attend treatment sessions and [was] terminated for excessive absences." Defendant did not provide evidence to the contrary, offering only a letter demonstrating he had been working. As a result, he was sentenced to 60 days in county jail.

Defendant was released from county jail on December 8, 2013, but had yet to re-enroll in the 52-week program as of January 30, 2014.

Defendant was given yet another chance to abide by the probation condition when, on March 6, 2014, as part of a negotiated plea, he admitted he failed to participate in and complete the 52-week program in exchange for a suspended four-year state prison sentence, waiver of presentence custody credit, and enrollment in and completion of the 52-week program. He was ordered to appear in 45 days to produce proof of re-enrollment in the program. At that time, he was "self-employed."

Defendant provided proof of enrollment on April 25, 2014, but was again terminated on October 10, 2014, for "excessive absences." According to trial counsel's representation to the court on October 22, 2014, defendant was "employed at . . . a local restaurant."

Between April 23, 2014, and October 10, 2014, defendant attended a total of 14 sessions and had more than seven absences (the program stops counting after three and notifies probation), all of which were unexcused. Despite that he was given the opportunity to make up the missed classes, he failed to avail himself of that opportunity.

Contrary to defendant's claims, there is sufficient evidence that defendant failed to participate in the 52-week program in a consistent, sustained manner.

Defendant contends the evidence establishes his unexcused absences "were due to financial hardship." He argues the program failed to provide a sliding fee schedule based on his ability to pay pursuant to section 1203.097, subdivision (c)(1)(P) and neither his

9

probation officer nor the court did anything to assist him in obtaining a fee reduction or waiver despite that he informed the court his inability to pay for the classes was "the sole purpose" for his absences. In short, defendant argues he "attend[ed] as many classes as he could afford." We are not persuaded.

Batterer's programs are required to develop and utilize a sliding fee schedule based on a defendant's ability to pay. (§ 1203.097, subd. (c)(1)(P).) The programs are also required to submit proof to the court and the probation department of a defendant's enrollment in the program and the fee to be charged to a defendant based on his ability to pay. (§ 1203.097, subd. (c)(1)(O)(i).) An indigent defendant may negotiate a deferred payment schedule, if he has the ability to pay the nominal fee. After a hearing and a finding of inability to pay the nominal fee, the court must waive the fee. (§ 1203.097, subd. (c)(1)(P).) The court may also reduce or waive the fees if it finds the defendant does not have the ability to pay the fees based on changed circumstances. (§ 1203.097, subd. (a)(7)(A)(ii).) *It is, however, incumbent upon the defendant to raise the issue by seeking financial aid or administrative review of his financial ability to pay.* (*People v. Orozco* (2012) 209 Cal.App.4th 726, 735 (*Orozco*).)

In *Orozco*, the defendant was terminated from a mandated drug treatment program for untimeliness and unsatisfactory performance. He claimed he was absent from the program due to incarceration and then "he lost his job, became homeless, and had no money to pay for a program." (*Orozco, supra*, 209 Cal.App.4th at p. 730.) The court found no error in terminating the defendant from the program, as the defendant was not performing satisfactorily before his incarceration, and never sought financial aid or an administrative review of his financial ability to pay. (*Id.* at p. 735.)

Here, like *Orozco,* defendant never requested review of his ability to pay or sought any sort of financial aid or waiver. As we shall explain, although defendant mentioned the issue of finances three times, none was sufficient to constitute a request for financial aid or review of his ability to pay.

10

The first instance occurred when, on August 8, 2013, defendant admitted violating probation after informing the court he had attended only three classes over the seven-month period since January 1, 2013. At that time, he told the court he "didn't continue to go" because he "was unable to pay [for his] classes." However, he made no request for financial aid or a waiver over that seven-month period, nor did he do so at the August 8, 2013, hearing. Instead, he told the court he "had just gotten a job within the last two or three weeks," implying that he would be able to pay for the cost of the classes from that point forward. Defendant apparently maintained his employment thereafter, and was still employed on November 9, 2013, when he offered to present a letter to the court from a woman with whom he was working.

The second instance occurred on March 6, 2014, when defendant admitted the allegations in the first amended petition for revocation of probation in exchange for a suspended four-year state prison sentence and his promise to enroll in, participate in, and complete the 52-week program. At that time, the trial court ordered defendant to return to court in 30 to 45 days to provide proof of enrollment. Instead of requesting a fee reduction or waiver, defense counsel requested additional time, telling the court, "[b]ecause he [defendant] has ongoing issues, lack of funds we ask for forty-five days to give him a chance to go out and get money to pay for classes." The court agreed to a follow-up court date of April 25, 2014. In response to the court's inquiry as to whether defendant had a job, defendant said he was "self-employed . . . doing landscaping, yard work."

The third instance occurred on April 2, 2014, when defendant told his probation officer that "he was struggling with his financial situation to pay for the classes." His probation officer offered transportation to help him look for employment, an offer defendant accepted once but declined a second time. Several weeks later he provided proof of enrollment to the court but said nothing about being unemployed or unable to

11

pay for the classes. Months later, on October 22, 2014, he informed the court he was in fact employed.

In any event, it is significant that the general policy of the 52-week program was to collect payment for each class up front and to allow attendees two weeks of nonpayment, and that attendance was generally prohibited in the absence of payment on the third week, yet defendant was never turned away from class for nonpayment or any other reason. It is also significant that not once did either the prosecution or the trial court mention failure to pay as a basis for termination of probation.

Contrary to defendant's claim that he did not attend program classes due solely to his financial hardship, there is sufficient evidence in the record to establish that he simply failed to attend a sufficient number of classes despite having been employed at least part of the time and despite being given numerous opportunities to do so, and that he sought neither financial aid nor a finding of inability to pay. The trial court did not abuse its discretion in terminating probation for inadequate participation in the 52-week program.

II

*Imposition of State Prison Sentence*

Defendant contends the trial court abused its discretion in sentencing him to state prison.

"If it appears to the prosecuting attorney, the court, or the probation department that the defendant is performing unsatisfactorily in the assigned program, is not benefiting from counseling, or has engaged in criminal conduct, upon request of the probation officer, the prosecuting attorney, or on its own motion, the court, as a priority calendar item, shall hold a hearing to determine whether further sentencing should proceed. The court may consider factors, including, but not limited to . . . noncompliance with any other specific condition of probation. If the court finds that the defendant is not performing satisfactorily in the assigned program, is not benefiting from the program, has

12

not complied with a condition of probation, or has engaged in criminal conduct, the court shall terminate the defendant's participation in the program and shall proceed with further sentencing." (§ 1203.097, subd. (a)(12).)

"Sentencing choices such as the one at issue here, whether to reinstate probation or sentence a defendant to prison, are reviewed for abuse of discretion." (*People v. Downey* (2000) 82 Cal.App.4th 899, 909.) "Our trial courts are granted great discretion in determining whether to revoke probation." (*People v. Rodriguez* (1990) 51 Cal.3d 437, 445.) "While [a trial judge] may not act arbitrarily in . . . revoking an order granting probation, yet it would require a very strong showing to justify a reviewing court to set aside an order of court . . . revoking probation after it was once granted, upon the ground that the judge had abused his discretion." (*People v. Lippner* (1933) 219 Cal. 395, 400; accord, *Rodriguez, supra*, 51 Cal.3d at p. 445.)

As discussed in part I of this opinion, defendant entered a negotiated plea on March 6, 2014, admitting he failed to participate in and complete the 52-week program in exchange for a suspended four-year state prison sentence, waiver of presentence custody credit, and enrollment in and completion of the 52-week program. Prior to that agreement, defendant's participation in the program was abysmal.

In the nearly seven months (approximately 28 weeks) that followed entry of the plea, defendant re-enrolled in the program as promised but attended only 14 sessions, giving Cerezo a "myriad of reasons" for his failure to attend the remainder and failing to provide any documentation to explain his absences. Although he was given opportunities to make up his absences, he failed to avail himself of those opportunities. As the trial court noted regarding the 52-week program, "It's anticipated that a person attend classes weekly and that . . . there is room for some excused absences. And it is quite appropriate for them to indicate that after so many unexcused absences . . . you're not participating as you're expected to in the program." In short, defendant was never turned away because of an ability to pay, he simply did not participate in the program as he was expected to.

13

After considering the testimony of defendant's probation officer and the program instructor, as well as the arguments of the parties, the trial court terminated defendant's probation concluding participation in and completion of the 52-week program "is a valid term and condition of probation, and it needs to be done in an appropriate manner and . . . in a manner that is consistent so that people get the benefit of the class. I think he's [defendant] been given two opportunities, and at some point in time we have to move forward." Based thereon, the trial court terminated probation and sentenced defendant to state prison consistent with defendant's earlier plea agreement. There was no abuse of discretion.

DISPOSITION

The judgment is affirmed.


      HULL      , J.


We concur:


    NICHOLSON    , Acting P. J.


     BUTZ     , J.