Filed 11/21/13  P. v. Yanka CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>RONALD YANKA,<br><br>    Defendant and Appellant. | C070616<br><br>(Super. Ct. Nos.<br>08F09598, 08F03102) |

In 2010, defendant Ronald Yanka was placed on probation with the condition he attend a 52-week batterer's treatment program.  In 2011, the batterer's treatment program director terminated defendant from the program for excessive unexcused absences.  The trial court found defendant had violated probation and ordered him to serve his previously suspended four-year prison sentence.  Defendant appeals the trial court's determination that he violated probation when he was terminated from the batterer's

1

treatment program, the revocation of probation, and the imposition of a prison term. He contends the court should have waived the treatment program fees and the trial court denied him equal protection when it found he had violated probation, revoked his probation, and sentenced him to prison based on his indigence. We affirm the judgment.

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

In February 2009, defendant pleaded no contest to first degree burglary (Pen. Code, § 459)[2] and admitted he had violated the terms of an earlier grant of probation. He was sentenced to a term of four years in prison. Execution of sentence was suspended and defendant was again placed on probation. In 2010, defendant violated his probation by committing spousal abuse on his cohabitant, child endangerment, damaging property, vehicle theft, and receiving a stolen vehicle. The court again granted defendant probation, with the added condition that he attend a 52-week batterer's treatment program. At that time, defendant was employed by Sealcoating and Paving. Between April 2010 and November 2011, defendant appeared in court more than a dozen times on various matters, including violations of probation. Some discussion or mention of the batterer's treatment program was made during at least nine of those appearances.

Defendant first enrolled in the Man Alive batterer's treatment program (program) on January 19, 2011. The program terminated defendant for unexcused absences on February 23, 2011. Defendant re-enrolled in the program on June 15, 2011, and the program again terminated him for unexcused absences on July 13, 2011. In January and March 2012, the probation officer and prosecutor, respectively, filed violation of probation petitions, alleging defendant violated probation when he was terminated from the program for excessive unexcused absences.

---

[1] Much of the factual background and procedural history of the underlying offenses and probation violations are irrelevant to the issues on appeal and are not recounted.

[2] Undesignated statutory references are to the Penal Code.

The trial court held a contested hearing on the probation violation petition. Daniel Thomas is the executive director of Man Alive, a nonprofit 52-week batterer's program. Man Alive is one of 10 different treatment providers in Sacramento County. The program's attendance policy requires if an enrollee will not be attending a meeting the enrollee is required to call the program and so advise. That call must be made before the end of the meeting. Attendance at the meeting must be made up within the next six days. A failure to call in or attend the makeup class is registered as an absence. If an enrollee misses a meeting because he is arrested and in custody, and advises Thomas of this reason, he will be allowed to rejoin the program.

Inability to pay for classes does not result in rejection from the program, as payment plans are available. Payment plans are developed using a sliding scale based on household income. When an enrollee cannot provide proof of income, he or she is given a standard reduced fee of $15. The fees can be further reduced with additional documentation. Thomas advises the enrollees if they cannot pay or fall behind on payments, they should talk to him and a payment plan will be developed. If an enrollee is more than three class payments behind, Thomas will talk with him and attempt to work out a payment plan. There are participants in the program who have gone longer than three weeks without paying and are allowed to continue in the program.

Thomas advises the participants that if they have any special payment needs they should have a discussion with him. If an enrollee provides documentation they have applied for public assistance or are not qualified for public assistance, the fees will be reduced. If a court makes a finding an enrollee is indigent, and the enrollee provides that paperwork to the program, the class fees will be waived for four to six weeks.

The trial court ordered defendant to enroll in the batterer's treatment program in April 2010. Defendant attended his first meeting in the program on January 12, 2011. Thomas advised him of the attendance policy and fee requirements.

3

Defendant enrolled in the program on January 19, 2011. At that enrollment, he paid a $35 initial enrollment fee and the $15 single class fee. He did not attend the next meeting on January 26, 2011, but called to advise the program he would not be there. Defendant attended a meeting on February 2, 2011, and paid $10, but he missed the next three meetings and did not call in. Following his fourth unexcused absence, Thomas terminated defendant from the program. Defendant testified he missed the January 26, 2011, meeting because his car had broken down. He missed the meetings in February because he did not have transportation. He claimed he called the first two times, but not after that.

Four months after his termination from the program, on June 15, 2011, defendant paid his past dues fees and re-enrolled in the program. He did not attend the next four meetings and did not call in to the program. Thomas again terminated defendant from the program again for unexcused absences. Defendant testified he failed to attend meetings in June 2011 because he was in custody. He was released from custody in late June or early July. He did not advise the program he had missed classes because he was in custody. He did not resume the program because he had "other issues" and was "more concerned" with "relationship problems" than financial problems or the batterer's program. The classes were the "last thing" on his mind. He decided to "screw everything." Between his release from custody and his rearrest on November 23, 2012, defendant did not attend any additional classes.

Defendant had been unemployed since the end of January 2011. In July 2011, defendant moved out of the home he shared with his girlfriend and became homeless. When he lived with his girlfriend, she received additional welfare benefits. Defendant's girlfriend paid for "a few" of the program meetings from that additional welfare income because defendant could not afford it.

Defendant testified he advised Thomas about his financial situation and was given a reduced class fee of $15. Thomas did not recall this conversation. Defendant claimed

4

he asked for additional fee reductions and Thomas denied the request. When he enrolled in the program, defendant did not provide any proof of income or employment information.

Contrary to Man Alive's policy, defendant believed he had to pay for missed classes. Defendant's girlfriend made some back payments so defendant could continue with the program, but defendant could not afford the ongoing program fees. Defendant admitted Thomas never told him he could not attend meetings if he did not pay the fees. Defendant did not ask his attorney about going to court regarding his financial problems and the batterer's program. He did not know he could ask for a modification to the probation condition.

Defendant claimed that in September 2011, he informed his probation officer he could not afford the batterer's treatment program as he was now homeless and unemployed. He claimed he again told his probation officer he could not afford the classes in November 2011. The probation officer indicated he would request alternative sentencing. Although the probation officer wrote a positive report, he did not request alternative sentencing.

Defense counsel argued defendant did not have the ability to pay for the program and, because of this inability, the court should have imposed the program on a "no fee basis, and that the county programs are required to have exemptions for people with no fee basis, and that that evaluation should have been done by the Court based on an equal protection clause argument."

The trial court rejected defendant's equal protection argument. The trial court agreed people should not suffer because they do not have the funds for a program and should not have to rely on others to pay the fees. The trial court found, however, the record did not show that Man Alive did not have a fee exemption program, nor was there evidence that Man Alive would not accommodate someone with an inability to pay. To the contrary, the evidence demonstrated no one was turned away for an inability to pay, a

5

sliding scale was used to determine fees or other accommodations would be made. The court noted defendant never provided any objective indication of his financial difficulties. The court found defendant did not fail to complete the batterer's program due to an inability to pay the fees, but because of a number of unexcused absences. The court also noted defendant himself indicated when he was released from custody in July, he had relationship problems he deemed more important than the program, and put the program on the "back burner" and his frame of mind was "screw everything." Based on these factors, the court concluded defendant's failure to attend the program was a violation of probation. The court revoked probation and ordered the previously suspended four-year sentence executed.

## DISCUSSION

"[W]here the trial court was required to resolve conflicting evidence, review on appeal is based on the substantial evidence test. Under that standard, our review is limited to the determination of whether, upon review of the entire record, there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision. In that regard, we give great deference to the trial court and resolve all inferences and intendments in favor of the judgment. Similarly, all conflicting evidence will be resolved in favor of the decision." (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848-849, fns. omitted.) "[I]t is the exclusive province of the trial judge . . . to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.]" (*People v. Jones* (1990) 51 Cal.3d 294, 314.)

I

Defendant contends the trial court erred by failing to waive the batterer's treatment program fees and providing him with the opportunity to participate in a no-cost program. Defendant argues the statutory scheme requires the batterer's treatment program to determine an enrollee's ability to pay the program fees under section 1203.097,

6

subdivision (c)(1)(O)(i) and the court should have found he was unable to pay for the program and waived the fees under section 1203.097, subdivision (c)(1)(P). He also claims the court erred in finding he violated probation by failing to attend the program, because the reason he did not attend the program was that he could not afford it. Thus, "the core reason for his failure to attend classes was an utter lack of money." We disagree.

Under section 1203.097, the court is required to order a person convicted of domestic violence who receives probation to complete a 52-week batterer's treatment program as a condition of probation. (§ 1203.097, subd. (a)(6).) Defendants are required to pay the program fees based on their ability to pay. (§ 1203.097, subd. (a)(7)(A)(i).) The programs are required to develop and utilize a sliding fee schedule based on a defendant's ability to pay. (§ 1203.097, subd. (c)(1)(P).) The programs are also required to submit proof to the court and probation department of a defendant's enrollment in the program and the fee to be charged to a defendant, based on his ability to pay. (§ 1203.097, subd. (c)(1)(O)(i).) An indigent defendant may negotiate a deferred payment schedule, if he has the ability to pay the nominal fee. After a hearing and a finding of inability to pay the nominal fee, the court must waive the fee. (§ 1203.097, subd. (c)(1)(P).) The court may also reduce or waive the fees if it finds the defendant does not have the ability to pay the fees based on changed circumstances. (§ 1203.097, subd. (a)(7)(A)(ii).)

In sum, the statutory scheme allows the batterer's treatment programs to charge fees, but also requires programs to make accommodations for defendants who cannot pay those fees. If the defendant is unable to pay some or all of those fees, it is incumbent upon that defendant to raise the issue either with the program or with the court. (§ 1203.097, subd. (c)(1)(P).)

Contrary to defendant's claims, the Man Alive program complied with the statutory requirements. The program has developed a sliding scale fee schedule and

7

utilizes it. The program makes accommodations and works with enrollees who have financial constraints to develop payment plans so they can continue to attend classes. If an enrollee provides the program with evidence of an inability to pay the fees, such as an application for public assistance, a disqualification from receiving public assistance, or a court finding of indigence, the program will reduce or waive fees. The program also advises participants to discuss any special payment needs with them.

The program required defendant to pay a reduced class fee of $15, based on his inability to provide proof of income. Had defendant provided additional documentation, the fees could have been further reduced. Without citation to any authority, defendant contends it was incumbent on the batterer's treatment program to notify the court of defendant's indigency. The statute does not impose such a requirement upon the program. Rather, the statute imposes the burden upon defendant to advise either the batterer's program or the court of his indigency or request a fee reduction. Absent defendant providing this information, neither the court nor the program could know an accommodation was required.

Defendant did not discuss with the program his lack of income, lack of employment, or inability to pay the class fees. Nor did he request to have the fees lowered. He did not provide proof of income, or lack thereof. He did not provide documentation that he had applied for assistance or did not qualify for assistance, either of which would have resulted in a fee reduction. He did not inform the program someone else was paying his class fees or that he had special payment needs, either of which would have led to a reduction in fees. He did not move the court for a finding that he was indigent and could not pay the fees, which could have resulted in a fee waiver. In short, defendant did nothing to advise or inform either the program or the court that he did not have the ability to pay the fees.

When he was initially ordered to attend the program, defendant was employed and living with his girlfriend. He became unemployed at the end of January 2011 and

8

homeless in July 2011, but did not advise the program, the court, his attorney, or probation officer of these changed circumstances.**3** He did not move to have his fees reduced or waived based on these changed circumstances. It was defendant's burden to raise and establish changed circumstances. (See *In re Casey D.* (1999) 70 Cal.App.4th 38, 47 [moving party's burden to establish changed circumstances on petition to change, modify or set aside a previous order in dependency proceedings]; *In re Marriage of Stephenson* (1995) 39 Cal.App.4th 71, 77 [moving party bears the burden of establishing a material change of circumstances since the last order was made in order to obtain modification of the spousal support order]; *Speelman v. Superior Court* (1983) 152 Cal.App.3d 124, 129 [party moving for change of custody bears the burden of showing change in circumstances].)

Defendant's reliance on *People v. Trask* (2010) 191 Cal.App.4th 387 (*Trask*) is misplaced. The defendant in *Trask* tried to enroll in the assigned drug diversion program, but could not afford the cost. (*Id.* at p. 392.) She "sought assignment to a no-cost diversion program or a fee waiver for an approved program." (*Ibid.*) Based on the specific statutory language of section 1000.3, the court held the "trial court erred in terminating defendant's diversion under deferred entry of judgment *solely based on her inability* to pay the fees of the [drug treatment] program to which she was referred." (*Trask, supra,* at p. 397, italics added, fn. omitted.) This case is more analogous to *People v. Orozco* (2012) 209 Cal.App.4th 726 (*Orozco*), where the defendant was terminated from the assigned drug treatment program for untimeliness and unsatisfactory performance. The defendant claimed he was absent from the program due to incarceration and then "he lost his job, became homeless, and had no money to pay for a program." (*Orozco, supra,* 209 Cal.App.4th at p. 730.) The court found no error in

---

**3**      Defendant first notified his probation officer of his inability to pay the fees in September 2011, two months after he was terminated from the program.

9

terminating the defendant from the program, as the defendant was not performing satisfactorily before his incarceration, and never sought financial aid or an administrative review of his financial ability to pay. (*Id.* at p. 735.)

Here, as in *Orozco*, defendant was not terminated from the program for failure to pay the fees, but for unsatisfactory performance in the program. The court expressly found defendant was terminated from the program because of a series of unexcused absences.

Defendant was initially ordered to attend the program in April 2010. He did not enroll until nine months later, in January 2011. Between April 2010 and January 2012, defendant appeared in court more than a dozen times. Some discussion or mention of the batterer's treatment program was made in at least nine of those hearings. Defendant made no mention of any financial challenges during these hearings, did not claim an inability to pay the program fees, did not indicate he was unemployed or homeless, and did not request a fee waiver or reduction.

According to defendant's own testimony, the reason he did not attend the program in February was not due to financial problems, but because he had transportation problems. He did not attend the classes in July because he was in custody. He did not advise the program he had missed classes because he was in custody, which would have enabled him to rejoin the classes. Instead, once he was released from custody, "he had other issues" to deal with that took priority over his financial concerns and the program and he decided "screw everything" and put the program on the "back burner." The court simply did not believe that defendant's failure to attend the batterer's treatment program was due to financial constraints. Substantial evidence supports these findings. The trial court did not err in terminating defendant from the program.

## II

Defendant next contends the trial court abused its discretion and deprived him of equal protection when it found he had violated probation, revoked his probation and

10

sentenced him to state prison.  This argument rests on defendant's claim that he failed to attend the classes based on his "utter lack of financial support and inability to afford the program."

The trial court may revoke probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or parole or otherwise that the person has violated any of the conditions of his or her supervision . . . ."  (§ 1203.2, subd. (a).)  "The standard of proof in a probation revocation proceeding is proof by a preponderance of the evidence."  (*People v. Urke* (2011) 197 Cal.App.4th 766, 772.)  The trial court has broad discretion in determining whether a probationer has violated probation.  (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443.)  Only in a very extreme case should an appellate court interfere with the discretion of the trial court in determining whether to deny or revoke probation.  (*Ibid.*, citing *People v. Lippner* (1933) 219 Cal. 395, 400.)

Due process precludes a court from revoking a defendant's probation and imprisoning him based solely on his failure to pay a fine or restitution, absent an inquiry into the reasons for the failure to pay.  (*Bearden v. Georgia* (1983) 461 U.S. 660, 672-673 [76 L.Ed.2d 221, 233] (*Bearden*).)  In arguing that the court below violated his constitutional rights by revoking his probation and sentencing him to prison, defendant relies heavily on *Bearden*.  This reliance is misplaced.  Unlike defendant here, the defendant in *Bearden* was imprisoned upon his inability to pay a fine, and the sentencing court failed to inquire into the reasons for the failure to pay.  (*Id*. at pp. 672–673.)  The United States Supreme Court held that to revoke probation on the grounds that the probationer had failed to pay a fine, without inquiring into whether that failure was willful, violated the Fourteenth Amendment.  (*Ibid*.)  The Supreme Court explained: "[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay.  If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay,

11

the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment." (*Id*. at p. 672.)

Defendant also relies on *In re Antazo* (1970) 3 Cal.3d 100. In *Antazo*, the court held that the incarceration of a defendant because of his inability, due solely to indigency, to pay a fine imposed on him as a condition of probation constituted a violation of equal protection. (*Id*. at p. 115.)

Here, defendant's probation was not revoked because of his indigency or because he did not pay the program fees. His probation was revoked because he did not attend the program. Defendant was not precluded from enrolling in the program or attending classes based on a lack of financial resources. Defendant was ordered to attend the program in April 2010, when he was employed. He did not make initial contact with the program until January 2011. He never provided any information to the program about his financial situation, and he never indicated someone else was paying the fees or that he could not pay the fees. Instead, he enrolled twice, paid the fees and then failed to attend the meetings. Despite making numerous court appearances, at which the program was discussed, he never informed the court or his attorney that he did not have the means to pay for the program and needed a fee waiver. He made no effort to seek a fee waiver until the hearing on the probation violation. His dilatoriness in making initial contact with the program and his failure to ever raise the issue of his inability to pay the fees is evidence that he was not doing everything possible to comply with the terms of his probation.

Defendant's testimony that he did not attend the program because he had transportation problems and had decided to "screw everything" is further evidence that defendant was not making sufficient bona fide efforts to comply with the terms of his probation and attend the program.

As noted in *Bearden,* "a probationer's failure to make sufficient bona fide efforts" to comply with a condition of probation "may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense." (*Bearden, supra,* 461 U.S. at p. 668.)  Here, the court was entitled to consider his overall efforts to comply with the terms of his probation.  Accordingly, we find no abuse of discretion in the trial court's decision to terminate probation and order defendant's sentence executed.

DISPOSITION

The judgment is affirmed.


      NICHOLSON     , Acting P. J.


We concur:


      ROBIE      , J.


      BUTZ      , J.